White v. White.

---

No. 20,502.

L. C. WHITE, revived in the name of GEORGE P. NEIMAN, as Executor, etc., *Appellee* and *Appellant,* v. C. L. WHITE, *Appellant* and *Appellee.*

SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT—*Crop Rent—Amount of Grain—Evidence.* Where a dispute arises between landlord and tenant over the amount of grain rent due on land leased for a share of the crop, the testimony of a witness who threshed the grain was not rendered incompetent merely because on cross-examination he admitted that he was not sure that all the grain was raised on the tract where the threshing was done.

2. DEED—*Father to Son—Time Deed Was to Take Effect—Evidence.* Where a father had executed deeds to certain lands to his son, and one of the chief questions arising from the father's later claims for rent thereon was whether the deeds were to be effective when executed or only at the father's death, it was competent to show the father's subsequent conduct asserting ownership of the property.

3. TRIAL—*Burden of Proof—Opening and Closing Arguments.* When a case involves two causes of action and the burden of the first is on the plaintiff and the burden rests on the defendant in the second, it is not important which litigant is permitted to open and close the argument to the jury so long as each has a fair opportunity to present and argue his side of the controversy. (Civ. Code, § 285.)

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed November 11, 1916. Affirmed.

*A. L. L. Hamilton, T. A. Kramer, B. R. Leydig,* and *George J. Benson,* all of El Dorado, for the plaintiff.

*G. P. Aikman,* and *C. L. Aikman,* both of El Dorado, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: This was a lawsuit between father and son. The father, L. C. White, now deceased, was the owner of certain lands in Butler county. In 1890 he executed a written lease of eighty acres to his son, C. L. White, the rent to be one-third of the crop delivered at the father's residence, and the duration of the lease was to be for the lifetime of the father. Among other terms of the lease was one which provided that at the death of both parents the son was to receive a warranty deed to the premises as his full share of his parents' estate. For many years the terms of this lease were observed, but in 1914 the son withheld the rent, and this default is the basis of the plaintiff father's first cause of action.

As a second cause of action, it was alleged that in 1912 the father executed a deed conveying another eighty acres of land to his son, the defendant—

"Which deed was delivered by plaintiff to the defendant to be held by the defendant in escrow until after the death of the plaintiff; that said deed was not to be recorded by defendant until after the death of plaintiff, that as a part of the consideration . . . defendant agreed [in writing] to deliver to plaintiff . . . one-third of all the grain and hay grown on said real estate each year during the lifetime of plaintiff."

It was also alleged that both parties complied with this contract during the season of 1912; but in 1913 the defendant withheld part of the rent due, and in 1914 withheld it all. Hence this lawsuit.

The gist of defendant's answer to the first cause of action was that in 1912 his father had voluntarily executed and delivered to him a deed to the land covered by the first lease and that his father at that time told him that he would not require the payment of rent thereon after that year. A copy of this

deed is shown and contains the usual recitals, stating the consideration to be $3000 duly received, with this addition:

"This deed not to be recorded until after the death of the grantee [grantor?]."

To the second cause of action the defendant pleaded the deed of 1912 mentioned in plaintiff's petition, and alleged that at the time the defendant paid plaintiff $2000 in cash and gave him two notes for $500 each; and that some time afterwards his father (orally) offered, for an additional consideration of $500, to release him from any further rental payments for the land covered by the second lease, and that he, the defendant, agreed thereto and in July of the same year paid his father that sum.

In reply, the plaintiff admitted that he signed the deed covering the land involved in the first lease, but that at the time he was eighty years old, feeble and in ill health, and that his sight was much impaired; that as defendant was his son he relied upon and trusted in him and depended upon his advice and counsel in business affairs—

"That defendant, knowing of the enfeebled condition of the plaintiff and his extreme old age, and knowing that the plaintiff relied upon him for counsel and advice and trusted him and taking advantage of said conditions of trust and confidence said defendant requested and importuned plaintiff to sign a deed for the real estate described in said deed, and said defendant orally stated and represented to said plaintiff in substance that if he signed said deed that its only effect and purpose would be to convey to defendant the title to said real estate upon the death of plaintiff in accordance with the terms of the lease, a copy of which is attached to plaintiff's petition and marked Exhibit 'A'; and that it would save expense to defendant, and trouble and legal proceedings after the death of plaintiff, and that said lease would be carried out in full by defendant and that said deed should not be delivered during the lifetime of plaintiff, but during the lifetime of the plaintiff should be held in escrow by the defendant until the death of plaintiff, and that said deed should not be recorded until after the death of the plaintiff, and that this plaintiff relied upon the statements and representations made by this defendant, and trusting to his judgment and advice, signed and acknowledged said deed, and the same was taken possession of by the defendant to be held in escrow in accordance with such statements and agreements of the defendant."

On these issues the case was tried, and the jury rendered a general verdict for the defendant on the first cause of action and for the plaintiff on the second. Both parties appeal.

Defendant complains of the admission of incompetent testimony. It was incumbent on the plaintiff to prove the amount of the grain rent due on the land covered by the second lease. To that end he called certain witnesses more or less acquainted with the facts, and among these was a man who had threshed the grain. By skillful cross-examination this witness was made to admit that he was not sure that all the grain was raised on that particular tract of land. But the testimony of this witness was not the only evidence offered by the plaintiff, and even if it was somewhat uncertain, it was not incompetent; and furthermore, the exact amount of grain raised was a fact peculiarly and accurately within the knowledge of the defendant, and he offered no evidence which contradicted plaintiff's showing thereon.

Another error urged was the admission of testimony to the effect that when the father came to demand his rent the son told his father to get off the land, that he "took him by the arm and ordered him off or that he would kick him off." The plaintiff was entitled to show the conversation between the parties at the time the father came to demand the rent, and it was competent to show that he was still insisting on his rights as the owner of the property. Elsewhere similar testimony, showing in a more aggravated form the language and conduct of the son, was stricken out. It might have been better if the court had uniformly ruled out all the testimony touching the son's threats, but it was not serious, and cases are not reversed nowadays on such trivial matters as these. (Civ. Code, § 581.)

Another error assigned was the admission of evidence showing that the father usually paid his taxes to his local banker. Of course that is not the place where taxes are due, but it is a very common custom for people to entrust their funds to their local bankers, and to depend on their bankers to pay the county treasurer. It was competent and probative to show whether the father still claimed the ownership of the property.

Error is assigned because of the court's ruling that the plaintiff was entitled to open and close the argument, when the second cause of action had "more involved," and the court had ruled that "the burden" of it "was on the defendant." We perceive no error here. The *order* of the argument is not very important if counsel have a fair opportunity to present and

White v. White.

argue their side of the controversy, and no showing is made here that they did not.   (Civ. Code, § 285.)

Turning next to plaintiff's appeal:   He contends that it was error to permit the jury to know that the father had other lands besides those involved in this lawsuit, and that it was likewise error to permit evidence showing improvements made on the land by the defendant.   These errors are inconsequential.   He also complains because the scrivener, who wrote the deed from father to son, testified to the "ultimate fact" of the father's capacity to understand the transaction.   This last complaint, technically, but only technically, does make a point for plaintiff.   We do not think it of any consequence here. No showing was made that the father did not understand what transpired at the scrivener's.   There is no dispute about the fact that the son was to have a deed to the property some time, and even if the father had not understood the transaction, and had never made a deed at all, the son would be entitled to a conveyance of some sort, some time, from somebody, of this property.   Such was the father's written agreement made twenty years before.   Counsel for plaintiff apparently did not think their client's age and infirmities were too great for him to appear and testify in his own behalf.   The scrivener's evidence as to the "ultimate fact" of the father's understanding would be more questionable if the jury had not seen the father and heard his statement of the transaction from his own lips.

The plaintiff also objects to the instructions.   These we have carefully examined, and when they are all read and construed together we find them fair, precise and comprehensive, and not subject to any serious criticism.

The judgment is affirmed.